**HOLLY NURSING CARE CENTER, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, Janet Berndt, and Subsequent Injury Fund, Respondents.**

No. 99CA0657.

Colorado Court of Appeals, Div. V.

Dec. 9, 1999.

Miles, McLaren & Peters, P.C., Bonnie J. McLaren, William A. Richardson, Denver, Colorado, for Petitioner.

No Appearance for the Industrial Claim Appeals Office of the State of Colorado.

Michael W. Seckar, Pueblo, Colorado, for Respondent Janet Berndt.

Ken Salazar, Attorney General, Joseph Haughain, Assistant Attorney General, Denver, Colorado, for Respondent Subsequent Injury Fund.

Opinion by Judge DAVIDSON.

Petitioner, Holly Nursing Care Center (employer), seeks review of a final order of the Industrial Claim Appeals Office (Panel)

awarding Janet Berndt (claimant) permanent total disability benefits and future medical benefits without apportionment. We affirm.

Claimant injured her lower back when she slipped and fell off a chair while working for employer in October 1991. Prior to reaching maximum medical improvement (MMI) for this injury, claimant manifested an admitted occupational disease in February 1992 while working for the same employer. That disease was caused by many years of lifting as well as certain pre-existing gynecological conditions. With record support, the Administrative Law Judge (ALJ) found that claimant reached MMI from both injuries on July 7, 1993. On conflicting medical and vocational evidence, the ALJ also concluded that the combined effects of the industrial injuries rendered claimant unable to earn any wages and, therefore, the ALJ determined that she was permanently and totally disabled.

The ALJ further found that claimant's pre-existing gynecological conditions were asymptomatic prior to the onset of symptoms in 1992. Therefore, the ALJ denied employer's request to apportion disability benefits under § 8–42–104(2), C.R.S.1999. The ALJ also denied apportionment of liability to the Subsequent Injury Fund (SIF) because claimant's permanent and total disability resulted from a combination of industrial and non-industrial causes.

On review, the Panel affirmed the ALJ's order, but based the denial of apportionment on reasoning different from that used by the ALJ. The Panel ruled that the term "previous disability" used in § 8–42–104(2) refers to a condition that is permanent in nature at the time of the subsequent injury. The Panel concluded that the effects of claimant's 1991 injury did not constitute a "previous disability" because the claimant had not attained MMI for the first injury before she suffered the second injury. Based upon the same reasoning, the Panel affirmed the denial of apportionment to SIF.

### I.

■ Employer first contends that claimant failed to sustain her burden of proving that she was permanently and totally disabled. We disagree.

A person is permanently and totally disabled if he or she is unable "to earn any wages in the same or other employment." Section 8–40–201(16.5)(a), C.R.S.1999.

■ The determination whether a claimant is permanently and totally disabled is made on a case by case basis and varies according to the particular abilities and circumstances of the claimant. *Weld County School District RE–12 v. Bymer,* 955 P.2d 550 (Colo.1998); *Lobb v. Industrial Claim Appeals Office,* 948 P.2d 115 (Colo.App.1997).

■ In making the determination whether a claimant is permanently and totally disabled, the ALJ may consider the "human factors," such as education, ability, and former employment, which were relevant to the determination of permanent total disability prior to the adoption of § 8–40–201(16.5)(a). *Best–Way Concrete Co. v. Baumgartner,* 908 P.2d 1194 (Colo.App.1995). Because it is a factual determination, an ALJ's resolution that is supported by substantial evidence is binding on review. Section 8–43–301(8), C.R.S.1999.

Here, the ALJ resolved the conflict in the vocational and medical evidence in favor of claimant by crediting the opinions of her treating physician and vocational rehabilitation expert, each of whom opined that she was not employable. The vocational expert was aware of claimant's previous part-time, "sheltered" employment and testified that it was highly improbable that claimant could secure a similar position if she lost that job. Accordingly, the ALJ's determination that claimant was permanently and totally disabled is binding on review.

### II.

■ Employer also asserts that there was insufficient evidence to establish that claimant reasonably needs future medical care. We disagree.

■ The ALJ may order the employer to provide future medical treatment if there is substantial evidence in the record that future treatment is "reasonably necessary to relieve

the [claimant] from the effects of the industrial injury...." *Grover v. Industrial Commission,* 759 P.2d 705, 709 (Colo.1988); *see Stollmeyer v. Industrial Claim Appeals Office,* 916 P.2d 609 (Colo.App.1995). This rule recognizes the reality that the need for medical treatment does not necessarily cease upon the entry of an award of permanent disability and an injured worker may still require "periodic medical care to prevent further deterioration in his or her physical condition." *Grover v. Industrial Commission, supra,* 759 P.2d at 710.

Here, the ALJ concluded that claimant needed medication on a continuing basis to control the pain from her injuries. This conclusion was supported by the testimony of both claimant and her treating physician. While neither the statute nor *Grover* requires that the claimant receive such treatment at the time future medical benefits are awarded, the evidence here showed that claimant was taking medication at the time of the hearing.

Because the award of medical benefits was supported by substantial evidence, it may not be set aside on review.

### III.

■ Employer next contends that 50% of claimant's permanent total disability should have been apportioned either to claimant or to the SIF. We disagree.

■ Apportionment of disability awards is governed by § 8–42–104(2), which requires the reduction of a disability award to reflect the extent to which a "previous disability" impacts upon a present disability rating. By its terms, § 8–42–104(2) applies to all previous disabilities, except when the statute governing SIF liability for previous industrial disabilities is applicable. *Bowland v. Industrial Claim Appeals Office,* 984 P.2d 660 (Colo.App.1998) (cert. granted May 24, 1999).

■ The SIF statute, § 8–46–101(1)(a), C.R.S.1999, applies only if two or more industrial disabilities combine to render a claimant permanently and totally incapable of steady gainful employment and incapable of rehabilitation to steady gainful employment. It imposes liability on a later employer for the portion of the permanent total disability attributable to the last injury, while making SIF responsible for that portion caused by the previous industrial injuries. *Bowland v. Industrial Claim Appeals Office, supra.*

■ Whether either apportionment statute is applicable is a question of fact. *Mountain Meadows Nursing Center v. Industrial Claim Appeals Office,* 990 P.2d 1090 (Colo. App.1999).

■ If a claimant has a prior impairment, but is asymptomatic at the time of the subsequent injury, apportionment is not appropriate. *Lambert & Sons, Inc. v. Industrial Claim Appeals Office,* 984 P.2d 656 (Colo. App.1998); *cf. Colorado Mental Health Institute v. Austill,* 940 P.2d 1125 (Colo.App.1997) (remand necessary to consider if pre-existing conditions that were not asymptomatic prior to the onset of the occupational disease were disabling).

### A.

The Panel here rejected employer's contention that the 1991 injury constituted a "previous disability" under § 8–42–104(2) because it concluded that the phrase refers to a condition that is permanent in nature at the time of the second injury. This conclusion is supported by the plain language of § 8–42–104(2)(c), C.R.S.1999, which provides that it applies only to apportionment of permanent partial and permanent total disability benefits. It is also supported by general principles of apportionment, which require that the previous disability be permanent in character. *See* 5 A. Larson, *Workers' Compensation Law,* § 59.32(h) at 10–564.43 (1999). Therefore, we agree with the Panel that § 8–42–104(2) does not apply to the apportionment of temporary disability.

This interpretation is consistent with the interpretation of § 8–42–104, C.R.S.1999, in *Askew v. Industrial Claim Appeals Office,* 927 P.2d 1333 (Colo.1996), in which the supreme court recognized that the decision whether apportionment is appropriate is to be made at the time that a permanent medical impairment rating is determined.

Permanent disability cannot be determined until MMI is reached. *See Golden Animal Hospital v. Horton,* 897 P.2d 833 (Colo.1995). Therefore, the Panel further determined that the effects of a prior industrial injury cannot constitute a "previous disability" under § 8–42–104(2) unless a claimant has attained MMI for the prior injury before the date of the subsequent injury. Because the Panel's analysis is reasonable, we adopt its construction of the statute. *See Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985) (agency interpretation of statute entitled to great deference); see also *City & County of Denver v. Industrial Commission,* 690 P.2d 199 (Colo.1984).

Here, the Panel determined that because the claimant did not reach MMI for the 1991 injury until July 7, 1993, that injury could not constitute a "previous disability" under § 8–42–104(2) at the time of the 1992 injury. Because we agree with the Panel's analysis and conclusion, we also agree that apportionment was not appropriate.

### B.

For similar reasons, the Panel concluded that for purposes of apportionment under § 8–46–101(1)(a), and contrary to employer's contention, claimant did not have a "previous" permanent partial disability at the time of the 1992 injury. This conclusion is supported by the plain language of the statute, which apportions liability to the SIF only when an employee has previously suffered a "permanent industrial disability."

The order is affirmed.

Judge TAUBMAN and Judge KAPELKE concur.